NATTIEL & ASSOCIATES
BY BRIAN F. HUMBLE, ESQUIRE                          ATTORNEY FOR THE PLAINTIFF
IDENTIFICATION NO.: 88887 (PA)                       JURY TRIAL REQUESTED
1315 WALNUT STREET
SUITE 732
PHILADELPHIA, PA 19107
215-545-7778

| | | |
|---|---|---|
| JAMES HARRIS, an individual | : | IN THE UNITED STATES DISTRICT |
| 2415 North 30th Street | : | COURT FOR THE EASTERN DISTRICT |
| Philadelphia, PA 19132 | : | OF PENNSYLVANIA |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION No. |
| V. | : | |
| | : | |
| OFFICER MICHAEL PAIGE, an individual | : | |
| 3815 Pulaski Avenue | : | |
| Philadelphia, PA 19140 | : | |
| | : | |
| And, | : | |
| | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| c/o Law Department | : | |
| One Parkway, 15th Floor | : | |
| 1515 Arch Street | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Defendants | | |

## **COMPLAINT**

1.     This Civil action is brought pursuant to 42 U.S.C. §1983 for violations of the Plaintiff's rights under  the United States Constitution committed under the color of State law, under Article 1, Section 28 of the Pennsylvania Constitution, and under Pennsylvania Statutory and Common Law. Jurisdiction is premised on 28 U.S.C. §1331, and State law claims subject to supplementary and pendant jurisdiction.

2.     This Civil Action is brought by the Plaintiff James Harris who is an individual and a  member of the Philadelphia community and a citizen of the United States whose domicile and residence is in the City of Philadelphia within the Commonwealth of Pennsylvania against the Defendant Police Officer Michael Paige, who is an  individual whose residence, domicile and place of employment is in the City of Philadelphia within the Commonwealth of Pennsylvania,  for acts committed under the show of authority and color of state law while on duty as a Philadelphia Police Officer, and against the Defendant, City of Philadelphia, which is a municipality within the Commonwealth of Pennsylvania.

3.     Plaintiff seeks declaratory, monetary and other appropriate relief to address the violation of his rights  guaranteed to him by the Constitution and Laws of the United States of America and the Constitution and Laws of the Commonwealth of Pennsylvania, and torts committed against his person, property, and effects.

## JURISDICTION

4.     Jurisdiction is conferred to this court by 28 U.S.C. §1331 and §1343, which

       provide for original jurisdiction in Federal Court for the plaintiff's claims arising

       out of the laws of the United States and over actions to recover damages or secure

       relief under the appropriate governing statutes of the United States.

5.     The amount in controversy exceeds One Hundred and Fifty Thousand Dollars

       ($150, 000.00), exclusive from interest and costs.

6.     This Court has jurisdiction over the plaintiff's claims under the Statutory and

       Common Law of the Commonwealth of Pennsylvania pursuant this court's

       supplemental jurisdiction under 26 U.S.C. §1367.

7.     Venue is invoked pursuant the dictates of 28 U.S.C §1391(b).

8.     Plaintiff James Harris is an individual residing in the Commonwealth of

       Pennsylvania at 2415 301th Street, Philadelphia, PA.  19132.

9.     Defendant, Officer Michael Paige (hereinafter Paige), is an individual residing in

       the Commonwealth of Pennsylvania at 3815 Pulaski Avenue, Philadelphia, PA

       19121.

10.    The Defendant Paige was at all relevant times a Philadelphia Police Officer,

       employed by the Philadelphia Police Department and acting under a show of

       authority conferred to him by the Defendant City of Philadelphia and under the

       color of State Law.

11.    Defendant, City of Philadelphia, is a municipality within the Commonwealth of

       Pennsylvania, which owns, manages, monitors and controls the Philadelphia

Police Department and its agents.

# FACTUAL ALLEGATIONS

12.     The Defendant Paige has been the subject of at least seven (7) Internal Affairs investigations involving internal and civilian complaints prior to March 16, 2007, all of which the Philadelphia Police Department and the Defendant  City of Philadelphia had prior notice of.

13.     On or about March 16, 2007, around 11:00 p.m. into the early morning hours of the subsequent day the Defendant Paige was on duty as a Philadelphia Police Officer, in full uniform and patrolling the Fairmount Park area of Philadelphia, Pennsylvania in a marked Philadelphia police vehicle.

14.     The Defendant Paige was on duty by himself (solo).

15.     The Plaintiff  James Harris was legally parked in his vehicle on the Belmont Plateau in Fairmont Park with a friend, Qaadir Hughes.

.   16.     The Defendant Paige stopped and detained the Plaintiff James Harris under the ruse of a formal police investigation and  under the show of authority conferred to him by the Defendant City of Philadelphia and the color of state law.

17.     The Defendant Paige did not observe any violations of the law that would legally justify and/or warrant an investigation, stop, detention, seizure, and or search of the Plaintiff or the Plaintiff's friend, Mr. Hughes, and/or their respective property and effects.

18.     The Defendant Paige did not investigate or run the license plate, inspection sticker, registration information, and/or  vin number,  all of which were  lawfully

displayed on  Plaintiff's vehicle.

19.    The Defendant Paige first ordered Mr. Hughes out of the vehicle and ordered him to sit in the front seat of Defendant Paige's marked police vehicle.

20.    The Defendant Paige never conducted a proper and/or formal police investigation of Mr. Hughes, rather it was the Defendant Paige's intent to separate the parties.

21.    The Defendant Paige asked Mr. Hughes if he had facial hair, then ordered Mr. Hughes to close his eyes and further conducted a visual inspection of Mr. Hughes face to determine if in fact Mr. Hughes had any facial hair.

22.    The Defendant Paige conducted this visual inspection of Mr. Hughes in order to decide who between the Plaintiff and Mr. Hughes the Defendant found more sexually attractive.

23.    The Defendant Paige conducted this visual inspection in order to decide who he was later going to kidnap, abduct, rape, and sexually assault.

24.    The Defendant Paige ordered Mr. Hughes to return to the passenger seat of the Plaintiff's vehicle so that the Defendant Paige could independently assess the Plaintiff's appearance.

25.    The Defendant Paige then ordered the Plaintiff Mr. Harris into the front seat of the Defendant's police vehicle in order to conduct a visual inspection of the Plaintiff's face and other physical attributes, all of which was done without legal authority or the consent of the Plaintiff.

26.    The Defendant Paige then ordered the Plaintiff, without cause, to provide information and documents regarding the Plaintiff's identity, license information,

and purpose for being parked in Fairmount Park in order to perpetuate the ruse of a formal police investigation by using the power and authority entrusted and conferred to him by the Philadelphia Police Department and the Defendant City of Philadelphia, all of which was done under the color of State Law.

27.    Fairmount Park is a large recreational area and facility regulated, preserved and protected by the Defendant City of Philadelphia and the Commonwealth of Pennsylvania for the purpose of public enjoyment and recreation, for which the Defendant Paige and the Philadelphia Police Department, are charged and authorized by the Defendant City of Philadelphia to further that purpose and mission in the public trust.

28.    The Plaintiff cooperated with the Defendant Paige and provided the Defendant with biographical information, insurance, and registration information in the form of documents, as well as a pay stub in order to verify his identity.

29.    The Plaintiff further cooperated with the Defendant Paige's  unlawful investigation and detention by volunteering that his driver's license was suspended, and that he was wanted as a Scofflaw for several unaddressed traffic violations.

30.    The Defendant Paige never investigated or entered any of the Plaintiff's biographical information in his police computer in order to conduct a proper investigation despite the fact that information provided by the Plaintiff warranted a standard police investigation for outstanding traffic violations and driving under a suspended license.

31.     The Defendant Paige knew that he could manipulate his unchecked police power to arrest and confiscate property to threaten and coerce the Plaintiff to cooperate and then later isolate the Plaintiff.

32.     The Defendant Paige  never conducted an investigation regarding the Plaintiff's admission that he was driving with a suspended license and that he had potential warrants under Scofflaw, which may have warranted seizure of the Plaintiff's vehicle, and/or an arrest for outstanding traffic citations.

33.     The Defendant Paige never utilized his police radio to conduct an investigation of the Plaintiff's information, nor did the Defendant Paige utilize said radio for back-up or support from other police agents and or personnel in order to facilitate an investigation and/or provide back-up for officer safety.

34.     The Defendant Paige pretended that the computer system in his police vehicle was malfunctioning, in order to continue the ruse that he was conducting a police investigation,  and he continued to further hold the Plaintiff captive, in order to facilitate his intent to  kidnap, abduct, rape, and sexually assault the Plaintiff.

35.     Contrary to the Defendant Paige's representation to the Plaintiff, the Defendant Paige's police radio and police computer were operational and functioning properly at the time.

36.     The Defendant Paige did not conduct a vehicle investigation for driving under  a suspended license under the Defendant City of Philadelphia's "Live Stop" program, nor did the Defendant Paige issue any citations.

37.     The Defendant Paige lied and falsified his report  in a 75-48A police report that

the status of the Plaintiff's driver's license information was either "none" or "unknown".

38. The Defendant Paige continued his illegal detention and investigation by inappropriately interrogating the Plaintiff regarding his sexuality and sexual disposition.

39. The Plaintiff assured the Defendant Paige that if the Defendant let him go, he would drive Mr. Hughes straight home, and then go home himself, and furthermore, discontinue operating his vehicle on the public streets of Philadelphia without a valid license in the hope that the Defendant Paige would let the Plaintiff go with a warning.

40. The Defendant Paige stated and warned the Plaintiff in an aggressive, authoritative, and threatening tone and under a show of authority that "you are not going home".

41. The Defendant Paige ordered the Plaintiff to take Mr. Hughes home and to drive back to Fairmont Park immediately, thus ordering the Plaintiff to further violate the traffic laws of the Pennsylvania by ordering the Plaintiff under the show of authority and the color of state law to continue to drive unnecessarily without a valid driver's license.

42. The Defendant Paige held and confiscated all of the documents and property of the Plaintiff that the Plaintiff had previously provided in order to identify himself while the Plaintiff drove Mr. Hughes home, in order to subject the Plaintiff to duress in order to force and compel the Plaintiff to return.

43.    The documents and property provided by the Plaintiff contained biographical information sufficient for the Defendant Paige to use his authority and power entrusted to him by the Defendant City of Philadelphia, to locate and identify the Plaintiff in the event the Plaintiff did not cooperate by returning.

44.    The Defendant Paige ordered and warned the Plaintiff not to talk to his friend about anything,  and to not tell anyone that he was ordered by a Philadelphia Police Officer to return to Fairmont Park.

45.    The Defendant Paige conducted all of his activities pertaining to the Plaintiff outside and away from hearing and sight of Mr. Hughes.

46.    The Defendant Paige never conducted a proper pedestrian or vehicle investigation in accordance with police procedure, which would include but not be limited to computer-N.C.I.C. check, utilizing police radio, investigation of license plate information, and/or live-stop for driving without a license, but rather exploited and abused his police power by holding private documents and information of the Plaintiff  in order to coerce and force the Plaintiff's return to the Fairmont Park, and  in order for the Defendant Paige to conceal the Defendant's illegal activity and to eliminate any potential witnesses.

47.    The Defendant Paige held the Plaintiff's documentation and personal information hostage under the show of authority and color of state law in order to illegally force the Plaintiff to return to Fairmont Park.

48.    The Plaintiff cooperated, trusted and obeyed the direct order of a Philadelphia Police Officer, the Defendant Officer Michael Paige,  by dropping his friend off

and immediately returning to Fairmont Park as an Officer of the Law had ordered him to.

49.     The Plaintiff trusted the Defendant Paige as an officer of law enforcement who was entrusted with the protection of the citizens of Philadelphia, and further trusted that the Defendant City of Philadelphia;  that one of its agents/officers would not conspire or intend to cause the Plaintiff harm.

50.     The Plaintiff feared the Defendant Paige as an officer of law enforcement who was granted police power by the Defendant City of Philadelphia to enforce the law and utilize the powers of force and arrest against citizens who do not cooperate.

51.     When the Plaintiff drove back to Fairmount Park the Defendant Paige ordered the Plaintiff back into the front seat of his police vehicle.

52.     The Defendant Paige, while still on duty and in his full uniform as a Philadelphia Police Officer, then abducted and/or kidnaped the Plaintiff by driving into another area of Fairmount Park in order to rape and sexually assault the Plaintiff

53.     The Defendant Paige drove his police vehicle while the Plaintiff was in the front passenger seat to a more secluded area of Fairmont Park.

54.     The Defendant Paige abducted the Plaintiff into an area of Fairmont Park secured by locked, yellow gates.

55.     The Defendant Paige gained entry beyond the yellow gates with keys that were provided and entrusted to him by the Philadelphia Police Department. and the Defendant City of Philadelphia.

56.      Said keys were provided and entrusted to the Defendant Paige for the purpose of

-10-

patrolling secured areas of Fairmount Park in order to protect and serve the citizens of Philadelphia, and preserve the integrity of Fairmount Park for the purpose of public recreation and enjoyment.

57.    The Defendant Paige instead utilized said keys to secure a secluded location previously known to the Defendant in order to commit crimes and bodily injury against the Defendant in the form of forcibly raping, kidnaping, and sexually assaulting the Plaintiff.

58.    The Defendant Paige sexually assaulted the Plaintiff several times.

59.    The Defendant Paige ordered the Plaintiff to expose his penis, stating "let me see the scale".

60.    When the Plaintiff responded in a confused manner, and remained silent out of fear and disbelief of the Defendant Paige's  intentions,  the Defendant  Paige pulled down his  pants of his police uniform, thus exposing  his penis in his police vehicle and in the presence of the Plaintiff.

61.    The Defendant Paige, while in full uniform,  placed his hand behind the Plaintiff's head without the Plaintiff's consent,  and with force directed the Plaintiff's head towards the Defendant's exposed penis, and forced the Plaintiff to place his mouth on the Defendant's penis under the show of authority and the color of state law, and without the consent of the Plaintiff.

62.    The Plaintiff was under duress and in fear for his life, and was thereby forced  to engage in non-consensual oral sex on several occasions.

63.    The Defendant Paige placed his finger in his own, the Defendant's,  mouth while

the Plaintiff was being forced to give the Defendant oral sex in order to wet and lubricate his finger and to later attempt to digitally rape the Plaintiff.

64.     The Defendant Paige then placed his wet finger down the back of the Plaintiff's pants and touched the Plaintiff's anus in an attempt to digitally rape the Plaintiff.

65.     The Defendant Paige caused his own saliva to touch and enter the Plaintiff's anus by attempting to digitally rape the Plaintiff with the Defendant's finger.

66.      The Plaintiff jerked his head upward in shock, and shook his head in an effort to plead with the Defendant Paige to show mercy and not rape him per anus.

67.     The Plaintiff was afraid of what the Defendant Paige would do if he refused to continue to cooperate, and was afraid that the Defendant Paige would kill him.

68.     The Defendant Paige forcibly pulled the Plaintiff's mouth off of the Defendant's penis before he ejaculated in the Plaintiff's mouth in order to prevent ejaculation so that the Defendant could prolong the Defendant Paige's sexual gratification, and further sexually assault the Plaintiff at another location in Fairmount Park.

69.     The Defendant Paige ordered the Plaintiff to get a condom from a duffle bag in the back of the Defendant's police vehicle.

70.     The Plaintiff was afraid that the Defendant Paige was going to use the condom in order to  attempt to anally rape the Plaintiff, and that the reason that the Defendant stopped himself from ejaculating prior to this was so that the Defendant could reserve ejaculation for the Defendant's further sexual gratification in the form of said anal penetration.

71.     The Defendant Paige stored and hid condoms in his police vehicle for the purpose

sexually assaulting the citizens of Philadelphia and/or sexual encounters while on duty and in his police vehicle.

72.   The Defendant Paige continued the abduction and kidnaping of the Plaintiff by driving the Plaintiff into a more secluded area of Fairmount Park.

73.   The Defendant Paige drove the Plaintiff to a more secluded area of Fairmount Park inside a fenced off section near a City of Philadelphia Recycling Center.

74.   The Defendant Paige was charged and entrusted by the Defendant City of Philadelphia with patrolling the area near the City Recycling Center.

75.    The Defendant Paige stated to the Plaintiff  "I guess no one is here," and thereafter elected  not to use the condom that he had previously ordered the Plaintiff to retrieve.

76.   The Defendant Paige then forced the Plaintiff to engage in oral sex a second time, by placing  his hand behind  the Plaintiff's head, stating with an authoritative tone "lets go," and forcing the Plaintiff's head and mouth down onto the Defendant's penis.

77.   The Defendant Paige forcibly ejaculated semen into the Plaintiff's mouth thus forcing an unwanted exchange of bodily fluids.

78.   The Plaintiff gagged and spit the Defendant's semen onto the ground of Fairmount Park.

79.   The Defendant Paige provided the Plaintiff with a rag and ordered the Plaintiff to clean and wipe Defendant's semen off of the Plaintiff's  face and mouth.

80.   The Plaintiff wiped the Defendant Paige's semen off of his face and mouth,  and

then threw the rag onto the ground of Fairmont Park.

81.    The Defendant Paige ordered the Plaintiff to retrieve the rag in order to conceal evidence of incident.

82.    The Plaintiff was forced to intentionally ingest and retain the Defendant Paige's semen in his mouth and body.

83.    The Defendant Paige then exited his police vehicle walked to passenger side of the police vehicle and urinated onto the grounds of Fairmont Park, and directly in front of the Plaintiff.

84.    While the Defendant Paige was urinating in front of the Plaintiff, the Defendant Paige left the keys to his police vehicle and his gun belt inside the Defendant Paige's police vehicle.

85.    The Plaintiff contemplated grabbing the gun and/or shooting the Defendant Paige, in an act of vengeance,  and/or attempting to escape by driving off in the Defendant Paige's police vehicle.

86.    The Plaintiff chose not to assault, shoot, and/or commit a crime against a Philadelphia Police Officer, the Defendant Officer Michael Paige,  in order to escape and/or defend himself.

87.    The Plaintiff decided  to further cooperate against his will because the Plaintiff determined that this was the only way he might survive and avoid being murdered by the Defendant Paige.

88.     The Plaintiff was in fear for his life because the Defendant Paige had already so blatantly and egregiously crossed all boundaries regarding police conduct and

human decency, such that under the circumstances it would not be inconceivable

that the Defendant Paige was considering the possibility of killing the Plaintiff in

order to prevent the Plaintiff from reporting the incident.

89.    The Plaintiff considered grabbing and using the Defendant Paige's firearm in

order to escape and/or defend himself,  but did not because he was not sure how to

operate the Defendant's firearm, he was not sure if it was loaded, and he was not

sure if the Defendant was armed with a secondary weapon.

90.    The Plaintiff considered shooting the Defendant Paige but unlike the Defendant,

decided to remain on the side of human decency and the law-abiding conduct

expected of him as a civilian,  thus choosing not to murder and/or assault a

Philadelphia Police Officer.

91.    The Plaintiff considered attempting to escape by driving off in the Defendant

Paige's  police vehicle, but decided not to because the Defendant Paige had

abducted him by driving the Plaintiff to an area of Fairmount Park unfamiliar to

the Plaintiff, and the Plaintiff was unsure about how to get out of the area to

safety.

92.    The Plaintiff considered attempting to escape by driving off in the Defendant

Paige's police vehicle but decided not to because the Defendant Paige could easily

radio to other officers and report that his police vehicle had been stolen at gun

point, that the Plaintiff- "suspect" was armed and dangerous, and thus increasing

the probability that an otherwise law-abiding Police Officer would shoot the

Plaintiff out of fear for his own safety and under the false reports of the Defendant

Paige.

93.    The Plaintiff carefully deliberated on his best chance of survival, and decided that under the circumstances his best chance of survival was to continue to cooperate against his will,  and to not alert the Defendant Paige in any manner that might indicate the Plaintiff would report or complain about what had happened.

94.    The Plaintiff considered that his life was at stake, and considered the consequences to his mother and family in the event he ended up missing or dead.

95.    The Defendant Paige got back in his patrol car and was deliberately silent and noticeably anxious, at which time the Plaintiff felt like the Defendant Paige was contemplating what to do next, specifically whether or not the Plaintiff could be trusted not to report the incident and whether or not he should kill the Plaintiff in order to insure the Plaintiff's silence.

96.    In an effort to alleviate the Defendant Paige's tension,  due to the Defendant Paige's obvious concerns that the Plaintiff might report the incident, the Plaintiff asked for the Defendant Paige's cellphone number, which the Defendant  refused, but instead ordered  the Plaintiff's to provide the Plaintiff's cellphone number.

97.    The Plaintiff considered giving the Defendant Paige a false number, but again decided cooperation provided his best chance of survival, and complied with the Defendant Paige by providing the Defendant his actual cellphone number.

98.    The Defendant  Paige immediately tested the Plaintiff's  veracity by  dialing the number that the Plaintiff had provided, causing the Plaintiff's cell phone to ring, which the Plaintiff had on his person.

99.    The Plaintiff feels and believes until this day that if his cellphone had not toned at the time the Defendant Paige dialed it that the Defendant would have killed him.

100.    The Defendant Paige ordered the Plaintiff to enter the name "Bubb" or "Bubba" in the Plaintiff's cell phone as a fictitious name for "Officer Michael Paige".

101.    The Defendant Paige entered the name "Bubba" as a nickname on his Philadelphia Police application in 1989.

102.    The Defendant Paige threatened the Plaintiff by  referring  to his own involvement in the investigation and death of Moises DeJesus in 1994 by warning and threatening the Plaintiff that " he had killed a man" and that the Defendant Paige and his brother officers were accused of murdering a Philadelphia Citizen.

103.    The Defendant Paige was in fact investigated by Internal Affairs and the Police Advisory Commission in 1994  for use of excessive force resulting in the death of Moises DeJesus where in fact the victim in that incident did die.

104.    It was determined through the investigation that the Defendant Paige and other officers had lied to Internal Affairs and the Police Advisory Board during the investigation of the death of Moises DeJesus.

105.    The Defendant Paige further warned and threatened the Plaintiff in reference to the incident involving Moises DeJesus,  that "he only kills someone if he has too," and that the Defendant Paige was once questioned by his own mother regarding the death of Moises DeJesus whereat the Defendant Paige stated to his mother "does this look like the face of a killer?"

106.    The Defendant Paige finally drove the Plaintiff back to the Belmont Plateau of

Fairmount Park and released the Plaintiff.

107.  The Plaintiff gagged and/or vomited in a paper cup while he was driving home, and has suffered anxiety since this encounter believing that he may be H.I.V. positive or contracted some other disease as a result of the encounter.

108.  The Internal Affairs Department of the Philadelphia Police Department later recovered the paper cup and obtained D.N.A. samples which were later submitted for D.N.A testing.

109.  D.N.A. analysis indicated the presence of the Defendant Paige's sperm mixed with the Plaintiff's saliva.

110.  The Plaintiff promptly reported the incident to the District Attorney's Office and Internal Affairs, who initially did not take the Plaintiff's report of being sexually assaulted by a Philadelphia Police Officer seriously.

111.  Internal Affairs Unit (hereinafter I.A.U.)  subjected the Plaintiff to numerous interviews in an effort to deliberately confuse the Plaintiff and to call into question the veracity of the Plaintiff's complaint.

112.  The I.A.U. inappropriately questioned the Plaintiff regarding the Plaintiff's sexuality in the same manner the Defendant Paige did prior to sexually assaulting the Plaintiff,  thus subjecting the Plaintiff to further humiliation, anxiety, fear, and injury.

113.  The I.A.U. investigation and tactics were designed to intimidate the Plaintiff into retracting his complaint and/or to develop a basis and justification for dismissing the Plaintiff's complaint as "unfounded," due to the "alleged embarrassing"

nature of the event.

114.   The I.A.U. was unable to dismiss the complaint due to the numerous complaints

prior to this incident regarding the Defendant Paige, the fact that physical

evidence later confirmed the Plaintiff's account, that the Plaintiff's mother was

and/or is a member of the Police Advisory Commission for the Housing

Authority, and that the Plaintiff was determined to pursue justice and

accountability despite the efforts to dissuade him and the extreme pain,

embarrassment, and humiliation he was subjected to and continues to be inflicted

with to this date.

115.   The I.A.U. conducted brief and willfully ineffective  interviews of at least eleven

(11) Police Officers of the 92nd District whereat several of the officers interviewed

were accompanied by representatives of the Fraternal order of Police (hereinafter

F.O.P.) and their respective Attorneys.

116.   The eleven(11) police officers interviewed were asked whether they would be

"willing to cooperate," despite the fact that none of the eleven (11) officers, other

than the Defendant Paige, were suspected of /or under investigation for any crime

or misconduct related to this incident or any other incident, thus affording and/or

licensing the Defendant Paige's brother officers to invoke and/or utilize the

accepted and permitted "code of silence".

117.   No other Police Officers from the 92nd, nor from any other district, that the

Defendant Paige may have served and worked with were interviewed.

118.   None of the individuals who had made prior civilian complaints against the

Defendant Paige were contacted or re-interviewed.

## COUNT I
### VIOLATIONS OF 42 U.S.C. 1983

### James Harris vs.  City of Philadelphia

119.   Plaintiff repeats and re-alleges paragraphs 1 through 118 above, as though fully set forth herein.

120.   At all times relevant the Defendant Paige, was a member of the F.O.P., and  an employee, servant,  and/or agent of the Defendant City of Philadelphia through the Philadelphia Police Department, which is owned and operated by the Defendant City of Philadelphia, and was acting under the authority conferred by the Defendant City of Philadelphia, and under the color of state law.

121.   The Defendant, City of Philadelphia (hereinafter Philadelphia) egregiously breached and callously disregarded its duty to the Plaintiff and the citizen's of Philadelphia by its negligent, reckless, knowing, and intentional conduct,  all of which was done in callous disregard to the potential for harm and injury to the Plaintiff and the citizens of Philadelphia, and thus deprived  the Plaintiff of his rights, privileges, and immunities secured to the Plaintiff by the Constitution and Laws of the United States.

122.   The Defendant Philadelphia failed in its duty to the Plaintiff and the public by callously disregarding the inappropriate interference, involvement, and undue influence of the F.O.P. with investigations and allegations of police misconduct, thus subjecting the citizens of Philadelphia and the Plaintiff  to harm, danger, and

-20-

injury.

123.    The Defendant Philadelphia  had prior information regarding the misconduct of

the Defendant Paige in the form of, but not limited to,  prior civilian and internal

complaints, prior I.A.D. investigations, and prior investigations by the Police

Advisory Board, which it failed and callously disregarded its duty to act upon said

information.

124.    The Defendant Paige callously referenced and used his prior publicized

involvement in the beating and death of a Philadelphia citizen, Moises DeJesus,

of which the Defendant Philadelphia had prior knowledge of, in order to threaten

and place the Plaintiff under duress, and in order to perpetrate acts in violation of

the Plaintiff's Constitutional Rights through forcible compulsion.

125.    The Defendant Philadelphia has encouraged, tolerated, ratified and has been

deliberately indifferent and in callous disregard to the following patterns,

practices,  and the need for more and different training, supervision, investigation

and/or discipline in the areas of:

a.    The use of unreasonable force and abuse of police powers by police

officers;

b.    The proper exercise of police powers, including but not limited to, the use

of force, verbal abuse, inappropriate conduct, and the willful disregard of

the rights for the purpose of police investigation, seizure, detention and

interrogation.

c.    The monitoring of officers whom it knew or should have known were

suffering from emotional and/or psychological problems that impaired
their ability to function as officers;

d.      The monitoring of officers whom it knew or should have known were
committing acts or were likely committing acts of police misconduct;

e.      The failure to identify and take proper remedial or disciplinary action
against police officers who were the subject of prior civilian or internal
complaints of misconduct;

f.      The failure of police officers to report the misconduct and unlawful
behavior of brother officers under the "code of silence";

g.      The failure to provide an effective means by which to monitor the
performance of police officers, to investigate allegations of police
misconduct, and to impose discipline and other remedial measures where
officers are found to have engaged in or encouraged misconduct or have
violated proper procedures and practices;

h.      The failure of police officers to follow established policies, procedures,
directives and instructions regarding protocols for investigating citizens
who have not committed a crime or any other violation justifying the use
of police power;

I.      The failure to establish and/or promulgate proper policies, procedures,
directives and instructions regarding protocols for the investigation of a
citizen who has not committed a crime or any other violation justifying the
use of police power;

j.  The failure to instruct and train officers the limitations of police power in a mere encounter, investigatory stops, Terry stops, Live Stops, and detention under probable cause;

k.  The failure of police officers to adhere to the limitations of there police power in a mere encounters, investigatory stops, Terry Stops, Live Stops, and detention under probable cause;

l.  The accepted practice of dismissing civilian complaints against police officers based on the denial or contrary statements and/or testimony of the responding police officer without further or limited investigation;

m.  The interference and/or undue influence of the F.O.P. in matters that affect and risk the safety of the public.

126. The Defendant Philadelphia callously disregarded its duty and thereby failed in its duty to properly investigate the background and history of its agents and employees before allowing police candidates to become police officers charged with preserving and protecting the public.

127. The Defendant Philadelphia actively and tacitly promoted unwritten and written policies and procedures that caused the stifling of complaints regarding police misconduct and inadequate investigations, leading to abuse of police authority and deprivation of Constitutional Rights, and therefore failed and callously disregarded their duty to protect and serve the public through a police force and its duty to address and remedy incidents of police misconduct.

128. The Defendant Philadelphia failed and callously disregarded its duty to

implement and develop policies as an adequate check on police power in order to prevent police misconduct arising out of custom, practice, and de facto policies in callous disregard to the potential for police misconduct, abuse of authority, and deprivation of Constitutional Rights.

129.   The Defendant Philadelphia failed and callously disregarded its duty to properly train and educate its officers, agents, subsidiaries, agencies, servants  and employees with regard to their duty to preserve and protect the Plaintiff and the public against abuses of police authority.

130.   The Defendant Philadelphia failed and callously disregarded its duty to adequately monitor the psychological and mental stability of its officers who are given authority to exercise the executive power of the Defendant Philadelphia to the extent of  use of deadly force, thus placing the citizens of Philadelphia in danger.

131.   The Defendant Philadelphia intentionally, willfully and callously disregarded and ignored a custom and practice of police misconduct and corruption, deprivation of rights, and dereliction from proper police procedure, thus willfully and deliberately promoting a culture of unchecked discretion of police power and police misconduct.

132.   The Defendant Philadelphia  failed and callously disregarded its duty to properly supervise its subsidiaries,  agencies,  agents, servants,  officers, and employees in order to insure  proper police procedure and administration of police power, and to protect the public from the potential for police misconduct.

133.   The Defendant Philadelphia  failed and callously disregarded its duty to develop

and formulate a proper and adequate system for filing complaints by the public, and callously disregarded the current system that is grossly inadequate.

134.   The Defendant Philadelphia  failed and callously disregarded its duty to properly sanction and/or discipline its servants, agents and employees who commit, and/or are aware of and conceal, and/or aid and abet violations of rights, thus causing and encouraging or facilitating  police officers to violate the Constitutional Rights of citizens  without consequence.

135.   The Defendant Philadelphia failed and callously disregarded its duty to develop policies and procedures for investigating a citizen in the event a solo officer is on duty by himself and his computer system fails, in order to insure an accurate record of an interaction with a civilian is created.

136.   The Defendant Philadelphia violated the Civil Rights Act of 1871, 42 U.S.C. §1983, by depriving the Plaintiff of the rights and privileges secured to him by the United States Constitution and the Laws of the United States under the color of State law.

137.   The Defendant Philadelphia deprived the Plaintiff of his Constitutional Rights under the color of state law, which are secured by the Fourteenth Amendment by depriving the Plaintiff of liberty and property without Due Process of Law, and by abridging the Plaintiff's privilege as a United State's Citizen to be free from offensive contact, and police intrusion without cause.

138.   The Defendant Philadelphia deprived the Plaintiff of his Constitutional Rights under the color of state law secured to him by the Fourth Amendment by

depriving the Plaintiff of his right to be secure in his person, papers, and effects, and against unreasonable searches and seizures.

139.   The Defendant Philadelphia deprived the Plaintiff of his Constitutional Rights under the color of state law secured to him by the Fifth Amendment by depriving him of liberty and property without Due Process of law.

140.   The Defendant Philadelphia deprived the Plaintiff of his Constitutional Rights under the color of state law secured to him by the Eighth Amendment by depriving him of his right not to be inflicted with cruel and unusual punishment.

141.   The Defendant Philadelphia  deprived the Plaintiff of his  right to be free of unwanted contact,  physical and/or sexual assaults, and from rape under the color of state law  as it is protected by the highest order of Natural Law, and is specifically  encompassed by the right to liberty, to be free of unreasonable use of force, unreasonable searches and seizures, and to be secure in his person and or property under the Fourth and Fourteenth Amendment, and is additionally secured by the Eighth Amendment prohibiting cruel and unusual punishment, all of which was done under the color of state law.

142.   The Defendant Philadelphia deprived the Plaintiff of his right to be free from false imprisonment, kidnaping, abduction, and unlawful restraint as it is secured and encompassed by the right to Liberty under the Fourteenth Amendment, the right to be Secure in Person and free of Unreasonable Searches and Seizures under the Fourth Amendment, the right to Liberty under the Fifth Amendment, and the right not to be inflicted with Cruel and Unusual Punishment and/or held without bail,

all of which was done under the color of state law.

143.    The Defendant Philadelphia deprived Plaintiff of his right to be free of
unreasonable search and seizures under the Fourth and Fourteenth Amendment by
the stop and seizure of the Plaintiff, his property, effects and papers, without
cause, warrant, reasonable suspicion, and/or probable cause, all of which was
done under the color of state law.

144.    The Defendant Philadelphia deprived the Plaintiff of his right to be secure in his
effects and papers under the color of state law by the seizure of his documents
and biographical information, all of which was done under the color of state law.

145.    The Defendant Philadelphia deprived the Plaintiff of his penumbra of rights and
his right to Liberty by depriving the Plaintiff of his Rights to Bodily Integrity,
Privacy, and to be on the public streets as protected by the Fourth and Fourteenth
Amendments and incorporation of the Bill of Rights, all of which was done under
the authority and color of state law.

146.    The Defendant Philadelphia deprived the Plaintiff of his rights to freely associate
and assemble on the public streets, to freely exchange ideas and communicate
information, as protected by the First Amendment, and the penumbra of rights
under the Fourth and Fourteenth Amendments incorporating the Bill of Rights
under by illegally stopping, detaining, investigating without cause, and thereafter
abducting and sexually assaulting the Plaintiff, all of which was done under the
color of state law.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT II
### VIOLATIONS OF 42 U.S.C. 1983

### James Harris  vs.  Officer Michael Paige

147.   Plaintiff repeats and re-alleges paragraphs 1 through 146 above, as though fully set forth herein.

148.   The Defendant Paige violated the Civil Rights Act of 1871, 42 U.S.C. §1983, by depriving the Plaintiff of the rights and privileges secured to him by the United States Constitution and the Laws of the United States under the color of State law.

149.   The Defendant Paige willfully, recklessly, and callously disregarded and thereby deprived the Plaintiff of his right to be secure in his person and his right to bodily integrity by abducting the Plaintiff and sexually assaulting him by a show of authority conferred to him by the Defendant Philadelphia and under the color of state law, and in callous disregard of the Plaintiff's constitutional rights.

150.   The Defendant  Paige  willfully, recklessly, and callously disregarded and thereby deprived the Plaintiff of his right to bodily integrity by forcing the Plaintiff to put his mouth on the Defendant's penis, and ejaculating semen into the Plaintiff's mouth and causing it to enter the Plaintiff's body, all acts for which were done in callous disregard of the Plaintiff's constitutional rights

151.   The Defendant Paige  willfully, recklessly, and callously disregarded and thereby deprived the Plaintiff of his right to be secure in his property, papers, and effects

by exploiting the power provided by the Defendant Philadelphia, by holding the Plaintiff's documents hostage and ordering the Plaintiff to return to Fairmont Park in order to rape and sexually assault the Plaintiff, all acts for which were done in callous disregard of the Plaintiff's constitutional rights

152.	The Defendant Paige willfully, recklessly, and callously disregarded and thereby deprived the Plaintiff of his right to be secure in his person, papers, effects, and/or property by intentionally, willfully, knowingly,  and recklessly placing the Plaintiff in fear of death and/or bodily injury by use of authority conferred to him by the Defendant Philadelphia and under the color of state law, by abducting the Plaintiff into a remote area of Fairmont Park, displaying his badge and weapon, and threatening the Plaintiff, all acts for which were done  in callous disregard of the Plaintiff's constitutional rights

153.	The Defendant Paige willful, recklessly, and callously disregarded the Plaintiff's Constitutional Rights by  forcing the Plaintiff to engage in oral sex by a show of authority conferred to him by the Defendant Philadelphia and under the color of state law by use of  forcible compulsion and coercion and/or by intentionally, willfully, and recklessly holding and placing  the Plaintiff under duress, all acts for which were done in callous disregard of the Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00) plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

-29-

## COUNT III
### VIOLATIONS OF THE UNITED SATES CONSTITUTION

### James Harris vs. City of Philadelphia and Officer Michael Paige

154.    The Plaintiff repeats and re-alleges paragraphs 1 through 153 above, as though fully set forth herein.

155.    The actions and conduct of the Defendants, acting individually and by and through their agents, servants, employees, agencies and subsidiaries as aforesaid, acting under State and local law, custom and usage, have deprived the Plaintiff of Equal Protection under the Law and Due Process, has resulted in Cruel and Unusual Punishment, and has deprived the Plaintiff of his Rights, Privileges, and Immunities as protected by the United States Constitution.

156.    The actions and conduct of the Defendants, acting individually and by and through their agents, servants, employees, agencies and subsidiaries as aforesaid, acting under State and local law, custom and usage, have deprived the Plaintiff of his rights as protected by, but not limited to, the First, Fourth, Fifth, Seventh, Eighth and Fourteenth Amendments of the United States Constitution.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00) plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

# COUNT IV
## VIOLATIONS OF THE PENNSYLVANIA CONSTITUTION

### James Harris vs. City of Philadelphia and Officer Michael Paige

157.   The Plaintiff repeats and re-alleges paragraphs 1 through 156 above, as though fully set forth herein.

158.   The actions and conduct of the Defendants, acting individually and by and through their agents, servants, employees, agencies and subsidiaries as aforesaid, acting under State and local law, custom and usage, have deprived the Plaintiff of Equal Protection under the Law and Due Process, has resulted in Cruel and Unusual Punishment, and has deprived the Plaintiff of his Rights, Privileges, and Immunities as protected by the Pennsylvania Constitution and the laws of the Commonwealth of Pennsylvania..

159.   The actions and conduct of the Defendants, acting individually and by and through their agents, servants, employees, agencies and subsidiaries as aforesaid, acting under State and local law, custom and usage, have deprived the Plaintiff of his rights as protected by, but not limited to, Article I Sections 1 through 26 of the Pennsylvania Constitution.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150, 000.00) plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT V
## SEXUAL ASSAULT-ASSAULT

### James Harris v. Officer Michael Paige

160.   The Plaintiff repeats and re-alleges paragraphs 1 through 159 above, as though fully set forth herein.

161.   The Defendant Paige assaulted the Plaintiff  by raping  and sexually assaulting the Plaintiff while in full uniform while on duty as a Philadelphia Police Officer, by forcing the Plaintiff to place his mouth on the Defendant's penis in order to force non-consensual acts of sex by use of compulsion, show of threat, and use of authority and power conferred to him by the Defendant Philadelphia.

162.   The Defendant Paige assaulted the Plaintiff by intentionally placing the Plaintiff in fear of harmful and/or offensive contact by ordering and forcing the Plaintiff to engage in sexual acts  under the show of authority in full uniform and while armed with a firearm and a badge, and by specific threats in the form of verbal threats including, but not limited to, making  reference to the Defendant Paige's involvement in the beating death of Moises DeJesus and stating that "he doesn't kill someone unless he has to".

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT VI
### SEXUAL ASSAULT-ASSAULT

### James Harris  vs.  Officer  Michael Paige

163.    The Plaintiff repeats and re-alleges paragraphs 1 through 162 above, as though fully set forth herein.

164.    The Defendant Paige assaulted the Plaintiff when the Defendant Paige raped an sexually assaulted the Plaintiff a second time near the utility building while the Defendant Paige was in full uniform and while on duty as a Philadelphia Police Officer, by forcing the Plaintiff to place his mouth on the Defendant's penis in order to force non-consensual acts of sex by use of  compulsion, show of threat, and use of authority and power conferred to him by the Defendant Philadelphia and by ejaculating in the Plaintiff's mouth without the Plaintiff's consent by use of  compulsion, threats, show of force, and use of authority and power conferred to him by the Defendant Philadelphia.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT VII
### SEXUAL ASSAULT-ASSAULT

### James Harris vs.  Officer  Michael Paige

165.    The Plaintiff repeats and re-alleges paragraphs 1 through 164 above, as though fully set forth herein.

166.    The Defendant Paige assaulted the Plaintiff when the Defendant Paige  raped and

        sexually assaulted the Plaintiff while in full uniform and while on duty as a

        Philadelphia Police Officer, by inserting his finger in the Plaintiff's anis  without

        the Plaintiff's consent by use of  compulsion, threats, show of force, and use of

        authority and power conferred to him by the Defendant Philadelphia.

        WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,

000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed

appropriate under the circumstances of this case.

## COUNT VIII
## FALSE IMPRISONMENT-UNLAWFUL RESTRAINT

### James Harris vs.  Officer  Michael Paige

167.    The Plaintiff repeats and re-alleges paragraphs 1 through 166 above, as though

        fully set forth herein.

168.    The Defendant Paige  kidnaped and therefore  falsely imprisoned and restrained

        the Plaintiff by forcing the Plaintiff to return to Fairmont Park, ordering the

        Plaintiff to get into the front-passenger seat thereby confining the Plaintiff in the

        Defendant's police vehicle and driving the Plaintiff into dark and secluded

        locations of Fairmont Park thereby creating fixed boundaries for the purpose of

        sexually assaulting and raping the Plaintiff.

        WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,

000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT IX
### BATTERY

### James Harris  vs.  Officer  Michael Paige

169.   The Plaintiff repeats and re-alleges paragraphs 1 through 168 above, as though fully set forth herein.

170.   The Defendant Paige  committed  battery when the Defendant Paige raped and sexually assaulted the Plaintiff while in full uniform, and while on duty as a Philadelphia Police Officer, by forcing the Plaintiff to place his mouth on the Defendant's penis in order to force non-consensual acts of sex by use of compulsion, threats, and show of force, and use of authority and power conferred to him by the Defendant Philadelphia.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed appropriate under the circumstances of this case.

## COUNT X
### BATTERY

### James Harris vs. Officer Michael Paige.

171.   The Plaintiff repeats and re-alleges paragraphs 1 through 170 above, as though fully set forth herein.

172.   The Defendant paige committed battery when the Defendant Paige raped an

sexually assaulted the Plaintiff while in full uniform and while on duty as a

Philadelphia Police Officer, by inserting his finger in the Plaintiff's anis his

without the Plaintiff's consent by use of compulsion, threats, show of force, and

use of authority and power conferred to him by the Defendant Philadelphia.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,

000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed

appropriate under the circumstances of this case.

## <u>COUNT XI</u>
### <u>BATTERY</u>

### <u>James Harris vs.  Officer  Michael Paige</u>

173.    The Plaintiff repeats and re-alleges paragraphs 1 through 172 above, as though

fully set forth herein.

174.    The Defendant Paige committed battery by raping  and sexually assaulting the

Plaintiff a second time near the utility building while the Defendant was in full

uniform, and while on duty as a Philadelphia Police Officer, by forcing the

Plaintiff to place his mouth on the Defendant's penis in order to force non-

consensual acts of sex by use of  compulsion, threats, show of force, and use of

authority and power conferred to him by the Defendant Philadelphia, and by

ejaculating in the Plaintiff's mouth without the Plaintiff's consent by use of

compulsion, threats,  show of force, and use of authority and power conferred to

him Defendant Philadelphia.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,

000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed

appropriate under the circumstances of this case.

## COUNT XII
### INFLICTION OF EMOTIONAL DISTRESS

### James Harris vs. Officer Michael Paige

175.   The Plaintiff repeats and re-alleges paragraphs 1 through 174 above, as though

fully set forth herein.

176.   The Defendant Paige's conduct and actions as incorporated above constitutes

extreme and outrageous conduct under the circumstances, and constituted multiple

acts perpetrated and inflicted on the Plaintiff for the purpose of inflicting

emotional distress in order to sexually assault the Plaintiff, and to compel the

Plaintiff not to report the incident, which said emotional distress exists and

remains as permanent injury to the Plaintiff's physical, emotional, and mental

health.

177.   The Defendant Paige's conduct and actions as incorporated above constitutes

extreme and outrageous conduct under the circumstances and constituted multiple

acts perpetrated and inflicted on the Plaintiff, which recklessly caused and

inflicted emotional distress, which said emotional distress exists and remains as

permanent injury to the Plaintiff's physical, emotional, and mental health.

178.   The Defendant Paige's conduct and actions as incorporated above constitutes

extreme and outrageous conduct under the circumstances and further constitutes

multiple acts perpetrated and inflicted on the Plaintiff, which negligently caused

and inflicted emotional distress, which said emotional distress exists and remains

as permanent injury to the Plaintiff's physical, emotional, and mental health.

WHEREFORE, Plaintiff demands entry of judgment in his favor and against the

Defendant in an amount in an excess of One Hundred and Fifty Thousand Dollars ($150,

000.00), plus counsel fees interest and costs of this action, and injunctive relief deemed

appropriate under the circumstances of this case.


## PRAYER FOR RELIEF

Plaintiff, James Harris, respectfully requests that this Court:

1) award the Plaintiff  damages and compensation for these actions alleged in

paragraphs 1 to 178 under 42 U.S.C. §1983 against all Defendants for the

violation(s) of his constitutional rights under the color of state law;

2) award the Plaintiff damages and compensation for these actions as in

paragraphs 1 to 178 against the Defendant Paige for violations and trespass

against  the Plaintiff's person, property, and effects encompassed by Pennsylvania

Law.

3) award the Plaintiff damages and compensation for these actions as alleged in

paragraphs 1 to 178 against all Defendants for the violation(s) of his

Constitutional Rights under the United States Constitution.

4) ) award the Plaintiff damages and compensation for these actions as alleged in

paragraphs 1 to 178 against all Defendants for the violation(s) of his

Constitutional Rights under the Constitution of the Commonwealth of

-38-

Pennsylvania.

5) enter declaratory judgment that the Defendants' actions, policies, practice, procedures and customs complained of herein violated the rights of the Plaintiff secured to him by the State and Federal Law and by the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania;

6) award the Plaintiff damages and compensation for humiliation, loss of status and reputation, loss of self esteem and loss of the ability to achieve and further improve his ability to provide for himself with the levels of reward earned;

7) award the Plaintiff compensation from pain and suffering and other damages in accordance with the appropriate state and federal law in an appropriate amount under the circumstances.

8) award the Plaintiff damages for psychological and medical care necessitated by the severe damages and consequences to the Plaintiff's mental and physical health.

9) award the Plaintiff punitive damages for the egregious conduct and violation of public trust where appropriate under State and Federal Law.

10) grant and award the Plaintiff costs, disbursements and reasonable attorney's fees;

11) grant the Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**LAW OFFICES OF NATTIEL AND ASSOCIATES**
**BY: BRIAN F. HUMBLE, ESQUIRE**


/s_____


Signature Validation: BFH8028

Brian F. Humble, Esquire
1315 Walnut Street, Suite 732
Philadelphia, PA 19107
(215) 545-7778
Attorney ID: 88887 (PA)